NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| DOMINGO MARTINEZ, | : | |
| | : | Civil Action No. 10-5083 (DMC) |
| Petitioner, | : | |
| | : | |
| v. | : | O P I N I O N |
| | : | |
| O. AVILES, et al., | : | |
| | : | |
| Respondents. | : | |
| | : | |

APPEARANCES:

    DOMINGO MARTINEZ, Petitioner, Pro Se
    A# 030-911-604
    Hudson County Correctional Center
    30-35 Hackensack Avenue
    Kearny, New Jersey 07032

CAVANAUGH, District Judge

Petitioner, Domingo Martinez ("Martinez"), is currently being detained by the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE") at the Hudson County Correctional Center in Kearny, New Jersey, pending his removal from the United States.[1]  On or about October 1, 2010, Martinez filed this Petition for Writ of Habeas Corpus under 28 U.S.C.

---

[1]  Effective March 1, 2003, the Immigration and Naturalization Service ("INS") ceased to exist as an agency of the Department of Justice, and its functions were transferred to the Department of Homeland Security ("DHS").  See Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (Nov. 25, 2002).  The Immigration and Customs Enforcement agency ("ICE") of the DHS is responsible for the interior investigation and enforcement functions that formerly were performed by the INS.

§ 2241, in which he challenges his mandatory detention pending

removal proceedings as unconstitutional.  The petition seeks

issuance of an Order to Show Cause.  However, Martinez failed to

pay the $5.00 filing fee, or submit a complete application to

proceed in forma pauperis.[2]

Martinez brings this action against O. Aviles, Facility

Director at Hudson County Correctional Center; J. Napolitano,

Field Office Director for Detention and Removal; Julie L. Myers,

Assistant Secretary of the ICE; Michael Chertoff, Secretary of

the DHS; and Michael B. Mukasey, United States Attorney General,

as the named party respondents (hereinafter referred to as "the

Government") in this action.[3]  (See Petition at Caption).  For

the reasons stated below, this petition for habeas relief is

---

[2]  Martinez must either pay the $5.00 filing fee or submit
an affidavit of indigency with his application for in forma
pauperis ("IFP"), which includes his institutional account
statement and a trust account certification form signed by an
authorized officer of the facility where Martinez is confined, as
required under Local Civil Rule 81.2(b).  Consequently, the Court
cannot grant IFP status at this time, and will direct petitioner
to either pay the $5.00 filing fee or submit a complete IFP
application as required under L.Civ.R. 81.2(b).

[3]  The Court notes that Mr. Chertoff and Mr. Mukasey are no
longer the Secretary of DHS and U.S. Attorney General,
respectively.  Further, Ms. Napolitano presently is the Secretary
of the DHS, and not the Field Office Director for Detention and
Removal as named by Martinez in his habeas petition.  Martinez
does indicate in his petition that Allen Sweeney currently is the
Field Office Director for Detention and Removal.  (See Petition
at ¶ 11).  It appears that Martinez is using a form petition that
has preprinted the names of the Secretary of the DHS and the
United States Attorney General.

2

subject to summary dismissal because mandatory detention pending completion of removal proceedings has been held constitutionally permissible.  See Demore v. Kim, 538 U.S. 510 (2003).

## I.  BACKGROUND

Martinez is a native and citizen of the Dominican Republic, who was admitted into the United States as a lawful permanent resident on or about November 12, 1972. (Petition, ¶¶ 2, 15). He admits a lengthy criminal history, spanning 1986 to 2009, having been convicted on numerous charges of petit larceny, third degree burglary, third degree robbery, assault, and criminal trespass. (Petition, ¶ 17 and attachment "A").  Martinez was confined at the Rikers Island correctional facility in New York, when the ICE took custody of him on January 29, 2010, after serving 10 days for a 2009 petit larceny conviction.  (Pet., ¶ 18).

Martinez has been detained at the Hudson County Correctional Center for nine months, since January 29, 2010, awaiting his final removal hearing before Immigration Judge Abraham, currently scheduled for December 6, 2010. (Pet., ¶ 19).  Martinez states that he is not eligible for release on bond pursuant to ICE procedures, and thus, has never had a bond hearing or custody review.  On July 12, 2010, he requested his release under supervision, but it was not granted. (Pet., ¶¶ 20, 24).

3

II. DISCUSSION

A.   Standard of Review

Martinez seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241(c)(3).  That section states that the writ will not be extended to a prisoner unless "he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  Under 28 U.S.C. § 2243, "[a] court ... entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto."

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

B.   Jurisdiction to Grant Habeas Relief

As stated earlier, Martinez brings this habeas action under 28 U.S.C. § 2241(c)(3), which requires that the petitioner show that "he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  The Court has subject matter jurisdiction over this petition because Martinez is being detained within its jurisdiction at the time he filed his petition, and because Martinez asserts that his continued detention is not statutorily authorized and is constitutionally impermissible because it violates due process under the Fifth Amendment.

C.   Relevant Statutory and Case Law Authority

Martinez admits that he is being held pursuant to the mandatory detention statute under 8 U.S.C. § 1226(c), or § 236(c) of the INA.  This statute provides for the mandatory detention, without bond while removal proceedings are pending, of those aliens who committed certain enumerated categories of criminal and other offenses.

Specifically, Title 8 of the United States Code, Section 1226 states:

> § 1226. Apprehension and detention of aliens
> (a) Arrest, detention, and release. On a warrant issued by the Attorney General, an alien may be ... detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General-
>      (1) may continue to detain the arrested alien;
>      [or] may release the alien on-

5

(A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
(B) conditional parole....
(c) Detention of criminal aliens.
(1) Custody. The Attorney General shall take into custody any alien who ...
(A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,
(B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C) or (D) of this title,
(C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentenced to a term of imprisonment of at least 1 year, or
(D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,

when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

(2) Release. The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of Title 18 that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding.  A decision relating to such release shall take place in accordance with a procedure that considers the severity of the offense committed by the alien.

8 U.S.C. § 1226.

    In other words, detention under § 1226(a) is discretionary

and requires individualized bond hearings, while detention under

6

§ 1226(c) is mandatory and does not provide for any bond hearing. Both provisions apply to "pre-removal-order detainees," that is, to those aliens who are in the midst of their removal proceedings and thus whose removal orders have not become "final."

Section 1226(a) provides the Attorney General (or the DHS)[4] with the discretionary authority to release an alien on bond or conditional parole pending completion of removal proceedings. Under § 1226(a), an alien may be released where he can show, to the satisfaction of the DHS/ICE, that he is not a flight risk or a danger to the community. 8 C.F.R. § 236.1(c)(8). A similar standard applies before the Immigration Judges and BIA. See Matter of Guerra, 24 I&N Dec. 37, 38 (BIA 2006).

Under the mandatory detention statute, however, immigration courts are without jurisdiction to redetermine the conditions of custody of an alien in removal proceedings subject to 8 U.S.C. § 1226(c)(1), such as by setting bond. 8 C.F.R. § 1003.19(h)(2)(i)(D)(2008). An alien may request a Joseph hearing before an immigration judge to determine if the alien is properly included in the mandatory custody provision, pursuant to Matter

_____

[4] Pursuant to the Homeland Security Act of 2002, all immigration functions vested in the Attorney general, with a few exceptions, were transferred to the Secretary of the DHS. The Attorney General has delegated his discretionary custody redetermination authority to the Immigration Judges and the BIA. See Matter of Guerra, 24 I&N Dec. 37, 38 (BIA 2006).

of Jospeh, 22 I.& N. Dec. 299 (BIA 1999) and 8 C.F.R. §
1003.19(h)(2)(ii).

Once the removal order becomes "final," the alien's "removal
period" begins to run.  Specifically, the "removal period" starts
on the latest of the following (1) the date when the order of
removal issued by an Immigration Judge ("IJ") becomes
administratively final (that is, appeal to BIA was either taken
and ruled upon in the sense that the appeal was denied, or the
time to file such appeal simply expired); or (2) if the removal
order is judicially reviewed and if a court orders a stay of the
removal, the date of the court's final order, or (3) if the alien
is detained or confined (except under an immigration process),
the date when the alien is released from confinement.  See 8
U.S.C. § 1231(a)(1)(B).

Under Section 1231(a)(1)(A), the government has a 90-day
"removal period" to remove an alien.  Detention during this 90-
day removal period is mandatory.  Section 1231(a)(1)(c), however,
provides that this 90-day removal period may be extended, and the
alien may remain in detention during such extended period, if the
alien "acts to prevent the alien's removal subject to an order of
removal."  8 U.S.C. § 1231(a)(1)(c).

Moreover, even after the 90-day "removal period," the
government may further detain the alien under 8 U.S.C. §
1231(a)(6).  However, the Supreme Court has held that aliens may

8

be detained under § 1231(a)(6) only for "a period reasonably

necessary to bring about that alien's removal from the United

States." Zadvydas v. Davis, 533 U.S. 678, 689 (2001).

Recognizing that its holding would lead to difficult judgment

calls in the courts, the Supreme Court "for the sake of uniform

administration in the federal courts" recognized a six-month

"presumptively reasonable period of detention." Id. at 700-01.

However, after establishing this "presumptively reasonable period

of detention," the Supreme Court stressed that

> after this 6-month period, o[nly if] the alien provides good
> reason to believe that there is no significant likelihood of
> removal in the reasonably foreseeable future, the Government
> must respond with evidence sufficient to rebut that showing.
> And for detention to remain reasonable, as the period of
> prior post-removal confinement grows, what counts as the
> "reasonably foreseeable future" conversely would have to
> shrink. This 6-month presumption, of course, does not mean
> that every alien not removed must be released after six
> months. To the contrary, an alien may be held in
> confinement until it has been determined that there is no
> significant likelihood of removal in the reasonably
> foreseeable future.

Id. at 701.

Moreover, no language in Zadvydas excluded or limited the

operation of the tolling-like function enunciated in 8 U.S.C. §

1231(a)(1)(c). Consequently, an alien who, during his

presumptive six-month Zadvydas-based period, takes actions

delaying his removal, cannot demand his release upon expiration

of these six months. See, e.g., Wang v. Carbone, No. 05-2386

(JAP), 2005 WL 2656677 (D.N.J. Oct. 17, 2005)(calculating the

presumptive period excluding the period of non-cooperation and relying on <u>Riley v. Greene</u>, 149 F. Supp.2d 1256, 1262 (D. Colo. 2001) and <u>Sango-Dema v. District Director</u>, 122 F. Supp.2d 213, 221 (D.Mass. 2000)). Rather, the period affected by the alien's actions is excluded from the six-month presumptive period articulated in <u>Zadvydas</u>, causing a quasi-tolling.

Thus, "<u>Zadvydas</u> does not save an alien who fails to provide requested documentation to effectuate his removal. The reason is self-evident: the detainee cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future if the detainee controls the clock." <u>Pelich v. INS</u>, 329 F.3d 1057, 1060 (9th Cir.2003).

D. <u>The Issue of Mandatory Detention</u>

Martinez asserts that his mandatory detention under § 1226(c) violates due process because it is an unreasonably prolonged detention. He seeks his release under supervision, or in the alternative, a bond hearing to be conducted on this issue of his release under supervision while his removal proceedings are ongoing.

The Attorney General may release an alien detained under § 1226(c) only for narrow reasons not implicated here. <u>See</u> 8 U.S.C. § 1226(c)(2).[5] Further, an alien detained under § 1226(c)

_____

[5] Section 1226(c)(2) reads: The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of Title 18 that release

10

is not afforded a bond hearing before an IJ, whereas a noncriminal alien, who is detained under § 1226(a), is given such a hearing. See 8 U.S.C. § 1226(a), (c). Consequently, Martinez, as an alien detained under § 1226(c), does not have an opportunity to show that he does not pose a danger to the community or a flight risk to be released on bond. See § 1226(c).

The United States Supreme Court held in Demore v. Kim, 538 U.S. 510 (2003), that mandatory detention under 8 U.S.C. § 1226(c) during removal proceedings does not violate the protections guaranteed under the Constitution. In Demore, a lawful permanent resident filed a habeas petition challenging the no-bail provision of § 1226(c), pursuant to which he had been held for six months during the pendency of removal proceedings against him. The Supreme Court held that detention of lawful permanent residents during removal proceedings is constitutionally permissible, even when there has been no finding that they are unlikely to appear for their deportation

_____

of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding. A decision relating to such release shall take place in accordance with a procedure that considers the severity of the offense committed by the alien.

proceedings.  Id. at 523-24.  In doing so, the Court noted that
detention pending removal "serves the purpose of preventing
deportable criminal aliens from fleeing prior to or during their
removal proceedings, thus increasing their chance that, if
ordered removed, the aliens will be successfully removed." Id. at
528.

However, the Supreme Court's holding in Demore, as noted in
Madrane v. Hogan, 520 F. Supp.2d 654 (M.D. Pa. 2007), is "narrow[
] ... grounded in repeated reference" to the brevity of removal
proceedings.  Id. at 664.  In Demore, the Supreme Court
recognized that § 1226(c) was intended only to "govern [ ]
detention of deportable criminal aliens pending their removal
proceedings," which the Court stressed typically "lasts roughly a
month and a half in the vast majority of cases in which it is
invoked, and about five months in the minority of cases in which
the alien chooses to appeal" his removal order to the BIA.
Demore, 538 U.S. at 527-28 (emphasis in original).

D.   Petitioner Is Not Entitled to Release from Detention

Martinez challenges his mandatory detention under 8 U.S.C.
§ 1226(c) substantially on the ground that it violates his rights
to substantive and procedural due process.  The petition plainly
states on its face that Martinez's removal proceedings are not
yet final.

This Court concludes that the United States Supreme Court's holding in Demore v. Kim, 538 U.S. 510 (2003) forecloses Martinez's constitutional challenge to his continued mandatory detention.

The custodial status of aliens who have committed crimes is governed by 8 U.S.C. § 1226 (INA § 236).  Section 1226(a) gives the Attorney General discretion to arrest and detain an alien pending removal proceedings and to release the alien on bond.  Section 1226(b) gives the Attorney General discretion to revoke a bond or parole under § 1226(a).  By contrast, however, § 1226(c) requires that aliens with certain enumerated criminal convictions be detained pending removal proceedings.  In particular, § 1226(c) provides for the detention of criminal aliens who are "deportable by reason of having committed any offense covered in [8 U.S.C. § 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D)]."  8 U.S.C. § 1226(c)(1)(B).

Here, Martinez admits in his petition that his detention is governed by 8 U.S.C. § 1226(c)(1)(B), as a deportable alien convicted of an aggravated felony whose removal proceedings are not yet final.[6]   As stated in the previous section of this

_____

[6]   Under 8 U.S.C. § 1231, the government may detain an alien subject to a final order of removal.  Section 1231(a)(6) provides, in pertinent part:

An alien ordered removed [1] who is inadmissible ... [2] [or] removable [as a result of violations of status requirements or entry conditions, violations of

13

Opinion, the Supreme Court has held that the detention of an
alien pursuant to the no-bail provision under § 1226(c) does not
violate due process under the Fifth Amendment.  DeMore, supra.
The Supreme Court reaffirmed its "longstanding view that the
Government may constitutionally detain deportable aliens during
the limited period necessary for their removal proceedings."
Id., 538 U.S. at 526.  The Court concluded that the mandatory
detention provision under § 1226(c) furthered the government's
legitimate purpose of preventing aliens from fleeing before the
removal proceedings are completed,[7] and that such detention would
be limited to a finite period of time generally needed for
completion of removal proceedings.  Id. at 529-531.

The Supreme Court, however, did not set a temporal time
limit on the detention of an alien pending removal proceedings,
acknowledging that detention under § 1226(c) was typically short
in duration.  Id. at 527-28 (distinguishing its decision in

---

criminal law, or reasons of security or foreign policy]
or [3] who has been determined by the Attorney General
to be a risk to the community or unlikely to comply
with the order of removal, may be detained beyond the
removal period and, if released, shall be subject to
[certain] terms of supervision ... ."


[7]  The Court also acknowledged that "in adopting § 1226(c),
Congress had before it evidence suggesting that permitting
discretionary release of aliens pending their removal hearings
would lead to large numbers of deportable criminal aliens
skipping their hearings and remaining at large in the United
States unlawfully."  Kim, 538 U.S. at 528.

<u>Zadvydas</u> with respect to detention under § 1231, by emphasizing that detention under § 1226(c) had an obvious termination point and that such confinement was generally brief).  <u>See</u> <u>also</u> <u>Contant</u> <u>v. Holder</u>, 352 Fed. Appx. 692, 694 (3d Cir. 2009)(where a pre-removal-order petitioner is being detained pending a decision on whether he is to be removed from the United States, there is no indication that petitioner cannot be deported to his country of origin following an unfavorable removability decision).

Moreover, while there may be legitimate concerns that due process necessitates an individualized custody evaluation for aliens who have been in detention pending lengthy removal proceedings, the Government is not obligated under the Due Process Clause "to employ the least burdensome means to accomplish its goal" in "dealing with deportable aliens." <u>Demore</u>, 538 U.S. at 528.

In this case, there is no indication that Martinez has been detained for an inordinately lengthy period of time, or that his removal proceedings are substantially delayed.  Martinez states only that he has been in detention for nine months.  He does not allege any inordinate delays by the DHS/ICE, and admits that he is challenging his removal.

Accordingly, this Court finds that Martinez has failed to state any violation of federal statutory or constitutional law respecting his mandatory detention pending removal proceedings.

15

Therefore, his petition seeking release from detention must be dismissed at this time.[8]

That leaves only the issue of bond hearings, which are inapplicable to aliens like Martinez, detained under Section 1226(c).  The Supreme Court observed in Demore v. Kim that the fact of the prolonged detention does not entitle an alien to individualized bond hearings if the alien "himself had requested a continuance of his removal hearing." Id. at 530. Consequently, Martinez's request for a bond hearing as provided under § 1226(a) is without merit and will be denied at this time.

E. Case Law Relied Upon by Petitioner

The Court's discussion would not be complete if the Court overlooked the immigration cases and additional claims invoked by Martinez.  First, Martinez's reliance on Zadvydas and Ngo v. INS, 192 F.3d 390 (3d Cir. 1999) for his release under supervision is misplaced because these cases involved individuals who had final orders of removal but whose removal could not be effectuated. Here, as stated above, Martinez is a pre-removal order alien subject to the mandatory detention provision under § 1226(c). Thus, there is no indication that petitioner cannot be deported to his country of origin following entry of a final removal

_____

[8]  The petition will be dismissed without prejudice to Martinez renewing his application to the extent that he can show inordinate delays by the Government that has perpetuated his detention, which is not alleged or evident from the instant petition.

16

order.  See Demore v. Kim, 538 U.S. at 528; Contant, 352 Fed.

Appx. at 694.  Moreover, Martinez has failed to demonstrate that

his detention has been unreasonably prolonged by the Government

to justify a bond hearing.

   Martinez also cites the following case law, which held that

prolonged mandatory detention under § 1226(c) raises serious

constitutional problems: Tijani v. Willis, 430 F.3d 1241, 1242

(9th Cir. 2005); Ly v. Hansen, 351 F.3d 263, 271-72 (6th Cir.

2003); Martinez v. Gonzalez, 504 F. Supp.2d 887 (C.D. Cal. 2007);

Nadarajah v. Gonzalez, 443 F.3d 1069 (9th Cir. 2006)(applying

Zadvydas principles of constitutional avoidance to construe all

immigration detention statutes).  However, Martinez declines to

refer to the Third Circuit's ruling in Contant, which held that

an alien's lengthy pre-removal order detention was not

indefinite, and thus, not in violation of due process.  Indeed,

Martinez does not face permanent detention like the aliens in

Zadvydas and Ly.  Much to the contrary, Martinez does not allege

that he cannot obtain his release to the Dominican Republic at

any time, and therefore, he does not face the prospect of

indefinite detention.

   Moreover, in all of the cases cited by Martinez, the

petitioners had been detained for a period of time significantly

longer than Martinez in this instance.  See Tijani, 430 F.3d 1241

(two years and eight months); Martinez, 504 F. Supp.2d 887 (four

17

years); Ly, 351 F.3d 263 (about 17 months); and Nadarajah, 443
F.3d 1069 (five years)[9].  None of these cases are binding on this
Court, and this Court, respectfully, does not find them
persuasive in any event, as the circumstances of their prolonged
detention are markedly different from the instant case.

Finally, Martinez's claims for relief are not supported.  In
his First Cause of Action, Martinez actually admits that he was
taken into immigration custody upon completion of his state
criminal sentence.  Thus, mandatory detention is applicable to
him.  Martinez also provides no factual basis or support for his
Second Cause of Action, which alleges a substantial challenge to
deportability.  Finally, petitioner's Sixth Claim, asserting that
his detention is excessive in violation of the Eighth Amendment's
bail clause does not apply to immigration cases.  The Supreme
Court has never held that persons detained in civil proceedings,
such as removal proceedings, are entitled to release on bail.
See Carlson v. Landon, 342 U.S. 524, 545-46 (1952); Bolante v.
Keisler, 506 F.3d 618, 619 (7th Cir. 2007).

In sum, this Court does not find any basis in the instant
case to depart from the express requirement of mandatory
detention under § 1226(c), as upheld in Demore v. Kim, and by the

---

[9]  Nadarajah can be distinguished further from this matter
because Nadarajah was never convicted of a crime like petitioner
here, and had prevailed at every administrative level of review
with respect to his challenge against removal.

Third Circuit in <u>Contant v. Holder</u>.  Therefore, Martinez's application for habeas relief from mandatory detention and his request for a bond hearing are dismissed without prejudice to his bringing a new action should he be able to demonstrate circumstances of indefinite detention and inordinate delays perpetuated by the Government.

III. <u>CONCLUSION</u>

Based upon the foregoing, the habeas petition seeking petitioner's release from detention pursuant to a bond hearing pending a final order of removal is dismissed without prejudice. Further, the application for an Order to Show Cause is denied as moot.  An appropriate Order accompanies this Opinion.

DENNIS M. CAVANAUGH
United States District Judge

Dated: 10/14/10